UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| AMERICAN COMMERCIAL BARGE LINE LLC | ) ) ) | CASE NO. 3:19-CV-817-JRW |
| **Plaintiff,** | ) ) | |
| V. | ) ) | |
| JOHN DAVIS, | ) ) | **COMPLAINT** |
| Serve: 11103 Halkirk Place<br>Louisville, Kentucky 40243 | ) ) ) ) | |
| MAUREEN KELLY DAVIS, | ) ) | |
| Serve: 3534 Plymouth Road,<br>Louisville, Kentucky 40207 | ) ) ) ) | |
| DESIGN CONNECTION, LLC | ) ) | |
| Serve: Cheryl Rago,<br>4874 Brownsboro Center,<br>Louisville, Kentucky 40207 | ) ) ) ) ) | |
| 4SONSSPORTS L.L.C., | ) ) | |
| Serve: Brian John Ullom<br>291 N. Hubbards Lane<br>Louisville, Kentucky 40207 | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

Plaintiff American Commercial Barge Line, LLC, for its Complaint against Defendants John Davis, Maureen Kelly Davis, Design Connection, LLC and 4SonsSports L.L.C.[1], states as follows:

---

[1] The parties to this Complaint are referred to herein as "ACBL," "John Davis," "Maureen Davis," "Design Connection" and "4SonsSports." John Davis, Maureen Davis, Design Connection and 4SonsSports are collectively referred to herein as "Defendants".

## INTRODUCTION

1. ACBL is a marine transportation company that operates tow boats and barges moving grain, dry bulk, and liquid commodities along United States inland waterways, including the Mississippi River system and its tributaries. John Davis was a purchasing agent employee for ACBL and was responsible for approving the purchase of items for ACBL towing vessels and their crews. For several years, John Davis, along with the other Defendants, engaged in a scheme to defraud ACBL.

2. While its means were complex, the Defendants' scheme was, ultimately, quite simple. In his role as purchasing agent, John Davis directed ACBL to purchase items from vendors that included Design Connection and 4SonsSports. Defendants then manipulated the purchasing process to embezzle monies from ACBL. For example, in some instances, Design Connection and 4SonsSports wrongfully inflated the cost of the items they sold ACBL. In other instances, John Davis caused ACBL to acquire items from other vendors, which John Davis then had delivered to Design Connections or 4SonsSports at no charge, and then Design Connections or 4SonsSports resold those items to ACBL for a price approved by John Davis. Through these means and others, Defendants were able to embezzle monies from ACBL and, on information and belief, Design Connections and 4SonsSports paid kickbacks to John Davis and Maureen Davis or otherwise shared portions of the amounts embezzled from ACBL with them.

3. Until recently, John Davis was able to conceal these activities from ACBL. The result is that Defendants have misappropriated potentially millions of dollars from ACBL. Over the relevant period, John Davis caused ACBL to purchase more than $2.5 million from Design Connections and 4SonsSports, with much of these amounts being amounts misappropriated from ACBL through Defendants' scheme.

**PARTIES**

4.     Plaintiff American Commercial Barge Line LLC is a limited liability company organized under Delaware law with its principal office located at 1701 E. Market Street, Jeffersonville, Indiana 47130. The sole member of ACBL is Commercial Barge Line Company, a Delaware corporation with its principal office located at 1701 E. Market Street, Jeffersonville, Indiana 47130. ACBL is therefore a citizen of Delaware and Indiana for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332.

5.     Defendant John Davis is an individual who, upon information and belief, resides at 11103 Halkirk Place, Louisville, Kentucky 40243. John Davis is therefore a Kentucky citizen for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332.

6.     Defendant Maureen Kelly Davis is an individual who, upon information and belief, resides at 3534 Plymouth Road, Louisville, Kentucky 40207. Maureen Davis is therefore a Kentucky citizen for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332.

7.     Design Connection, LLC is a limited liability company organized under Kentucky law with its principal office located at 4874 Brownsboro Center, Louisville, Kentucky 40207. Design Connection's sole member is Cheryl Rago, who upon information and belief is an individual that resides in Kentucky. Design Connection is therefore a Kentucky citizen for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332.

8.     Defendant 4SonsSports L.L.C. is a limited liability company organized under Kentucky law with its principal office located at 291 N. Hubbards Lane, Louisville, Kentucky 40207. 4SonsSports's members are Brian Ullom and Shawn Harkins, who upon information and belief are individuals that reside in Kentucky. 4SonsSports is therefore a Kentucky citizen for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between ACBL, a citizen of Delaware and Indiana, and the Defendants, who are all Kentucky citizens, and because the amount in controversy exceeds $75,000.

10. This Court has personal jurisdiction over the Defendants because they either reside or are located in Kentucky, and because their conduct occurred in Kentucky.

11. Venue in the Louisville Division of the Western District of Kentucky is appropriate pursuant to 28 U.S.C. § 1391(b) because the Defendants reside or are located in Jefferson County, Kentucky and because the Defendants' conduct occurred in that division.

## BACKGROUND

*ACBL operates towing vessels along United States waterways, and employs purchasing agents to procure everyday goods the crews of those vessels need during their voyages.*

12. ACBL is a marine transportation company based in Jeffersonville, Indiana. ACBL operates tow boats and barges moving grain, dry bulk, and liquid commodities along the United States inland waterways, including the Mississippi River system and its tributaries.

13. Between five to ten individuals typically crew the vessels ACBL operates. The crew members on ACBL mainline vessels live and work on the vessels for approximately one month at a time. In addition to shipping cargo, these vessels serve as living quarters, offices, cafeterias and recreation facilities for the crew operating them during voyages.

14. ACBL purchases various items to serve these crews' needs. Such "crew items" might include cleaning supplies, cooking supplies, household items, tools, engineering parts, exercise equipment and various other items.

15. Typically, ACBL purchases large volumes of these crew items from Amazon, Grainger, or other large vendors according to negotiated contracts. A crew member may purchase everyday, high-volume crew items, like work gloves, directly from these contract vendors without prior approval.

16. Crew members may purchase crew items from other non-contract vendors only with ACBL's approval. ACBL employs purchasing agents to oversee this process. The proper process starts when a crew member submits a "spot" purchase request to the ACBL purchasing agent with responsibility for that crew member's vessel. The purchasing agent then reviews the crew member's request, obtains approval for the purchase from the vessel's manager, and places the order with the vendor after obtaining a competitive price for the quantity, quality and delivery of the crew items being ordered. Typically, the vendor ships the crew items to an ACBL warehouse located near the river system, which then delivers the items to the vessel.

17. Transactions for these "spot" purchases are typically documented in the following way: the purchasing agent generates a "purchase order" and transmits it to the vendor to request delivery and promise payment. The ACBL warehouse, when it receives delivery of the crew items, generates a "receiving report" identifying the quantity and kind of crew items delivered. The vendor, in turn, submits an invoice to ACBL to obtain payment for the items it delivered. ACBL's accounts payable department then matches the purchase order, receiving report, and invoice and, assuming they match, issues payment to the vendor. Where these three documents are inconsistent, ACBL's accounts payable department asks the purchasing agents responsible for the "spot" purchase to review and approve payment of the invoice.

18. ACBL then must rely on the honesty and integrity of its employee purchasing agents, and the purchasing agents' compliance with their fiduciary obligations to ACBL, to ensure the integrity of the acquisition process for items acquired from vendors.

### *ACBL discovered in June 2019 that one of its purchasing agents, John Davis, had a relationship with ACBL non-contract vendor Design Connection that violated its Conflicts of Interest Policy.*

19. John Davis was employed by ACBL as a purchasing agent for ACBL between January 2008 and June 2019. In general, John Davis had responsibility to oversee purchasing for approximately thirty-five ACBL vessels and three ACBL fleet facilities.

20. As an employee purchasing agent, John Davis was required to identify any potential conflicts of interest associated with purchasing from vendors. Such conflicts include familial relationships at any vendors. These requirements are set forth in ACBL's Code of Ethics and Conflicts of Interest Policy.

21. In approximately June 2019, ACBL commenced an investigation into John Davis's conduct as a purchasing agent and his relationship with non-contract vendors.

22. John Davis's now ex-wife, Maureen Davis, was employed by, or affiliated with, Design Connection, an interior design company located in Louisville, Kentucky.

23. Unlike Amazon, Design Connection was not a contract vendor from which ACBL vessel crew members could directly purchase crew items without prior approval. Rather, for ACBL to purchase crew items from Design Connection, an ACBL purchasing agent, like John Davis, was required to initiate and approve any purchase.

24. At no time during this period did John Davis disclose to ACBL the conflict of interest arising out of Maureen Davis's employment or affiliation with Design Connection.

25. ACBL's purchasing records reflect that ACBL purchased approximately $2,193,482 in crew items from Design Connection between February 2013 and June 2019.

*John Davis and Maureen Davis caused ACBL to purchase crew items from Design Connection at inflated prices and caused ACBL to pay Design Connection for crew items it had already purchased from other vendors.*

26. ACBL's purchasing records reflect that between 2013 and 2019, Design Connection invoiced ACBL for prices well in excess of the items' actual or appropriate price, and that John Davis approved ACBL's payment of these inflated prices invoiced by Design Connection. These records also reflect that during the same time, John Davis caused ACBL to pay Design Connection for very the same crew items ACBL had already purchased from other vendors.

27. Almost none of the crew items John Davis caused ACBL to purchase from Design Connection were the kind of goods Design Connection typically sells to its customers. As stated above, Design Connection is an interior design company, and generally sells designer fabric, wallcovering, and blinds. (*See* Design Connection's website http://designconnectionky.com/index.html (last visited November 1, 2019).) Design Connection is not a retailer of kitchen appliances, and certainly does not market itself as a seller of, for example, river charts and commercial barge safety equipment.

28. Nevertheless, as an example, John Davis in his role as purchasing agent ordered a "user control board" for a Frigidaire upright freezer from Design Connection on ACBL's behalf in April 2019. (*See* April 11, 2019 e-mail from John to Cheryl Rago, a copy of which attached hereto as **Exhibit A**.)

29. ACBL has determined that the "user control board" John Davis ordered from Design Connection sells for only $125.73 on Amazon. Design Connection, however, charged ACBL $609.79 for this same part. (*See* Design Connection Invoice Number 65006, a copy of which is attached hereto as **Exhibit B**.)

30. In another example, Design Connection invoiced ACBL $3,012.50 for five river charts at a cost of $602.50 each. (*See* Design Connection Invoice Number 65160, a copy of which is attached hereto as **Exhibit C**.) For example, one river chart was for the Ohio River from Foster, Kentucky to New Martinsville, West Virginia; clearly an item that an interior design company does not generally sell. ACBL's practice is to order these same maps from a proper vendor that charges only $91 for each map.

31. In still another example, Design Connection invoiced ACBL $776.12 for a deep fryer. (*See* Design Connection Invoice Number 65080, attached hereto as **Exhibit D**.) ACBL has determined that this same deep fryer retailers for just $556.50 from other vendors.

32. Other invoices Design Connection issued to ACBL for purchases of crew goods show that Design Connection consistently charged ACBL a price significantly above that charged by other vendors.

33. Other records show that Design Connection also invoiced ACBL for the very same crew items that ACBL had already purchased from *other* vendors. John Davis would cause ACBL to purchase a crew item from a vendor, but rather than direct that vendor to deliver the crew item to ACBL's warehouse, John Davis directed the vendor to deliver it to Design Connection. Design Connection would then ship that same crew item, which ACBL had already purchased, to ACBL and invoice ACBL for it. In other words, John Davis and Design Connection caused ACBL to pay Design Connection for crew items already belonging to ACBL because ACBL had already purchased and paid for those items from other vendors, resulting in ACBL's paying twice for the same item and paying Design Connection for ACBL's own property.

34. One example is a March 28, 2019 invoice that shows that John Davis had caused ACBL to purchase two emergency escape hoods from Zoro.com for $862.38. (*See* March 28, 2019 Zoro.com Invoice Number INV5771238, a copy of which is attached hereto as **Exhibit E**.) An escape hood is an emergency respiratory apparatus. While that invoice billed ACBL for the escape hoods, and ACBL paid Zoro.com for the hoods, the invoice shows that the escape hoods were to be delivered to Design Connection, not an ACBL warehouse or facility. (*Id.*)

35. The escape hoods were delivered to Design Connection, and then Design Connection invoiced ACBL $730.00 for the same items. (*See* Design Connection Invoice Number 64999, a copy of which is attached hereto as **Exhibit F**.) To be sure, Design Connection, an interior design company, is not in the business of selling emergency respiratory items, such as escape hoods.

36. Records show that in addition to Design Connection invoicing ACBL for escape hoods, Design Connection also repeatedly invoiced ACBL for H2S meters (which are meters used to detect a high level of hydrogen sulfide that may be vented from liquid tank barges), and man overboard lights. Design Connection, an interior design store, is not in the business of selling such safety items to commercial entities. Design Connection obtained these items from ACBL pursuant to the scheme set forth in this complaint, and then sold them back to ACBL pursuant to the scheme.

37. Records show repeated and prolonged irregularities in invoicing and purchasing whereby John Davis, Maureen Davis, and Design Connection embezzled, or otherwise wrongfully obtained, substantial amounts of money from ACBL. In addition to the wrongful activities above, records show that Design Connection also, without limitation, (1) shipped low cost items to ACBL while invoicing ACBL for higher cost items, (2) submitted invoices to

ACBL for items Design Connection never delivered to ACBL, and (3) caused ACBL to pay for items it purchased but later returned to Design Connection with no corresponding refund.

38. ACBL's records also reflect that many of the invoices Design Connection submitted to ACBL were deliberately vague in order to obscure the items actually shipped and the appropriate price that should be paid for the items shipped.

39. ACBL's records also reflect that Design Connection frequently did not invoice ACBL for items it sold to ACBL until months after ACBL received the items. This was a further step taken by Design Connection, John Davis and Maureen Davis to obscure the scheme. Vague invoices sent months after the fact obscured Defendants actual wrongful activities.

40. Internal communication among Maureen Davis and Cheryl Rago, the sole member of Design Connection, show their knowledge and participation, and the knowledge and participation of Design Connection, in the wrongful scheme with John Davis:

> We have been doing this this a long time now. **John sends a lot of "free" money our way**, thousands of dollars probably with the meters and masks and reselling of items, he enables us to "add on" items we need and if product is ever returned gives us the opportunity to take it and re-use. I think our relationship has been a good one and beneficial to both.

(July 19, 2017 e-mail from Maureen Davis to Cheryl Rago, a copy of which is attached hereto as **Exhibit G** (emphasis added).)

### *John Davis and Maureen Davis also caused ACBL to purchase crew items at inflated prices from 4SonsSports*

41. ACBL's records show that Design Connection was not the only vendor engaged in this wrongful scheme with John Davis. John Davis also authorized a significant number of purchases by ACBL from Play It Again Sports & Fitness. Records show that many of the same wrongful practices utilized with Design Connection were also utilized with Play It Again Sports & Fitness.

42. Play It Again Sports & Fitness is a sporting goods and equipment franchise operated by 4SonsSports located at 291 N. Hubbards Lane, Louisville, Kentucky 40207. 4SonsSports was not a contract vendor for ACBL. This means that, like Design Connection, an ACBL purchasing agent had to facilitate the purchase of any crew items from 4SonsSports.

43. ACBL's purchasing records reflect that ACBL purchased approximately $586,653 in crew items from 4SonsSports between February 2013 and June 2019.

44. ACBL's purchasing records show that John Davis caused ACBL to purchase crew items from 4SonsSports at prices well in excess of the stated prices in 4SonsSports' own store or those charged by other vendors.

45. For example, records show that John Davis caused ACBL to purchase workout equipment (a dumbbell set and "powerblocks") from 4SonSports in March 2019. John Davis caused an ACBL purchase order to be issued for this equipment at $0.01. (*See* Purchase Order Number 51062341, a copy of which is attached hereto as **Exhibit H**.) 4SonsSports then sent ACBL an invoice for this equipment charging ACBL a total of $1,075 ($575 for the dumbbells and "powerblocks" and $350 for the rack). (*See* March 15, 2019 Invoice Number 1289, a copy of which is attached hereto as **Exhibit I**.).

46. ACBL has determined that 4SonsSports sold this same equipment in store at retail for less than half the total price it charged ACBL ($399 for the dumbbells and "powerblocks" and $89.99 for the rack). (*See* photographs attached hereto as **Exhibit J**.)

47. Other records of purchasing activity with 4SonsSports show similar irregularities evidencing repeated wrongful purchasing and invoicing activity to embezzle or otherwise wrongfully obtain substantial amounts of money from ACBL.

48. Like the invoices from Design Connection, ACBL's records show that many of the invoices 4SonsSports submitted to ACBL were deliberately vague to obscure the actual, wrongful activities.

49. Maureen Davis acted with 4SonsSports in connection with the wrongful invoicing and purchasing activity between John Davis and 4SonsSports. E-mails show that Maureen Davis would forward invoices from 4SonsSports to John Davis. (*See* May 20, 2019 e-mail from Maureen Davis to John Davis attaching 4SonsSports Invoice Number 1289, a copy of which is attached hereto as **Exhibit K**.)

50. Upon information and belief, Design Connection and 4SonsSports shared with John Davis and/or Maureen Davis through "kickbacks" or other means, portions of the amounts wrongfully obtained from ACBL through the wrongful activity described in this Complaint.

### *John Davis attempted to hide this fraudulent scheme by manipulating ACBL's purchasing records and practices*

51. For his part, John Davis accomplished his scheme with Maureen Davis, Design Connection, and 4SonsSports by taking certain steps to hide his purchasing activity from others at ACBL.

52. One method John Davis used to hide this scheme was to purchase crew items from Design Connection, 4SonsSports, and other non-contract vendors pursuant to purchase orders that priced the goods at $0.01. (*See, e.g.*, **Exhibit H**.)

53. Therefore, when the actual invoiced price by Design Connection or 4SonsSports did not match the purchase order price, John Davis, as the purchasing agent, would approve, wrongfully, the invoiced amount and cause ACBL to issue payment. John Davis's manipulation of records obscured and concealed his wrongful activities.

54. John Davis also obscured and concealed the scheme between him and vendors by initiating purchases from non-contract vendors without a purchase order at all.

55. By doing so, when items were received by ACBL without a corresponding purchase order, John Davis approved the invoiced item as a proper purchase, when it was not, causing ACBL to issue payment for the item at the invoiced amount.

56. Correspondence reflects Maureen Davis coaching John Davis on how to explain any inquiry by ACBL into the unusual volume of purchases John Davis had approved from Design Connection through Defendants' scheme. (*See* January 6, 2016 e-mail from Maureen Davis to John Davis, a copy of which is attached hereto as **Exhibit L**.) Maureen Davis concluded her e-mail advising John Davis to answer any questions about the propriety of such orders by saying "Going forward, I will try to be more conscious of . . . blah, blah, blah." (*Id.*)

*Defendants' scheme to defraud ACBL has damaged ACBL well
in excess of $75,000*

57. After it discovered Defendants' scheme, ACBL terminated John Davis as an employee.

58. Records show that John Davis's purchasing practices described above occurred between February 2013 and June 2019, and may have occurred before that time.

59. During that same time period (February 2013 to June 2019), ACBL paid Design Connection approximately $2,193,482. ACBL's records reflect that almost all of the items purchased from Design Connection were not marketed for sale to others by Design Connection and appear to have little to do with Design Connection's interior design business. Its records also reflect that Design Connection overcharged or double-billed ACBL for a substantial proportion of these items.

60. ACBL also paid 4SonsSports approximately $586,653 during the same time period. Like those items from Design Connection, ACBL's records and investigation reflect that much of the items John Davis caused ACBL to purchase from 4SonsSports were involved in the same fraudulent scheme.

61. Through their tortious conduct, Defendants embezzled or otherwise wrongfully obtained substantial sums well in excess of the $75,000 jurisdictional limit of this Court.

62. ACBL now files this Complaint against Defendants to recover those amounts Defendants wrongfully obtained from ACBL through their scheme and for punitive damages due to their tortious conduct.

## COUNT I
### BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT JOHN DAVIS

63. ACBL incorporates and reiterates all of the allegations set forth above as if set forth fully here.

64. John Davis, as a purchasing agent employee for ACBL, was a fiduciary of ACBL and owed fiduciary duties to ACBL, including the duty of loyalty, care, good faith, honesty, candor, due care, and fair dealing. Specifically, those fiduciary duties required John Davis to notify ACBL of any conflict of interest involving vendors from whom John Davis arranged purchases and, more obviously, not to engage in tortious conduct to the detriment of ACBL by embezzling or otherwise wrongfully causing ACBL to issue payment to vendors for millions of dollars and, upon information and belief, personally benefitting financially from the wrongful transactions.

65. The conduct by John Davis described in this Complaint constitutes a breach of his fiduciary duty to ACBL.

66. John Davis's breach of his fiduciary duties to ACBL harmed ACBL and caused ACBL to suffer damages in an amount in excess of $75,000 for which ACBL should be compensated.

## COUNT II
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS MAUREEN KELLY DAVIS, DESIGN CONNECTION, LLC AND 4SONSSPORTS L.L.C.

67. ACBL incorporates and reiterates all of the allegations set forth above as if set forth fully here.

68. John Davis breached his fiduciary duty to ACBL through the conduct described in this Complaint. Maureen Davis, Design Connection and 4SonsSports knew that John Davis was an employee and fiduciary of ACBL.

69. Maureen Davis, Design Connection and 4SonsSports knew that the conduct by John Davis set forth in this Complaint constituted a breach of fiduciary duty and, through their own conduct described in this Complaint, knowingly provided substantial assistance and encouragement to John Davis's breach of fiduciary duty

70. The aiding and abetting of John Davis's breach of fiduciary duty by Maureen Davis, Design Connection and 4SonsSports's has caused ACBL to be harmed and to suffer damages in excess of $75,000 for which ACBL should be compensated.

## COUNT III
### FRAUD AND FRAUDULENT CONCEALMENT AGAINST JOHN DAVIS AND DESIGN CONNECTION

71. ACBL incorporates and reiterates all of the allegations set forth above as if set forth fully herein.

72. The conduct by John Davis set forth in this Complaint constitutes fraud and fraudulent concealment. Without limitation, John Davis, as a purchasing agent employee and fiduciary of ACBL, had a duty to disclose to ACBL the conduct set forth in this Complaint

including his conflict of interest with vendors due to his relationship with Maureen Davis. He did not do so, thus facilitating the scheme described in this Complaint. Further, John Davis knowingly permitted Design Connection and 4SonsSports to submit invoices for prices contrary to appropriate or stated sale prices or for ACBL inventory that John Davis had directed to Design Connection or 4SonsSports. John Davis knowingly generated fraudulent purchase orders for $.01 or no purchase order at all in order to facilitate his misrepresentations that the invoices from Design Connection and 4SonsSports were appropriate and, therefore, he approved such invoices for payment. John Davis's actions in manipulating the ordering process were both fraudulent and also concealed the fraudulent activities preventing ACBL from discovering the scheme until recently. John Davis's actual fraud and fraudulent concealment caused ACBL to suffer damages in excess of $75,000, for which ACBL should be compensated.

73. The conduct by Design Connection set forth in this Complaint constitutes fraud and fraudulent concealment. Among other things, Design Connection obtained the property of ACBL such as escape hoods, H2S meters and man overboard lights, knowing that it had obtained at no cost property belonging to ACBL. Design Connection then shipped those same items to ACBL and knowingly misrepresented to ACBL that the items were inventory of Design Connection that it was shipping to ACBL in response to a legitimate purchase order from ACBL. To induce payment from ACBL for the wrongfully obtained items, Design Connection fraudulently invoiced ACBL for payment of items that Design Connection knew it had wrongfully obtained from ACBL at no cost. While Design Connection submitted fraudulent invoices to ACBL, at no time did Design Connection fully disclose to ACBL all of the true material facts, such as the fact that Design Connection was obtaining property from ACBL and invoicing ACBL for payment of ACBL's own property. Design Connection's actual fraud and

16

fraudulent concealment caused ACBL to suffer damages in excess of $75,000, for which ACBL should be compensated.

## COUNT IV
### AIDING AND ABETTING FRAUD BY MAUREEN KELLY DAVIS, DESIGN CONNECTION, LLC AND 4SONSSPORTS L.L.C.

74. ACBL incorporates and reiterates all of the allegations set forth above as if set forth fully here.

75. John Davis committed fraud against ACBL as described in this Complaint.

76. Maureen Davis, Design Connection and 4SonsSports knew that the conduct by John Davis set forth in this Complaint was fraudulent and, through their own conduct described in this Complaint, knowingly provided substantial assistance and encouragement to John Davis's fraud.

77. The aiding and abetting of fraud by Maureen Davis, Design Connection and 4SonsSports has caused ACBL to be harmed and to suffer damages in excess of $75,000.00 for which ACBL should be compensated.

## COUNT V
### PUNITIVE DAMAGES AGAINST DEFENDANTS JOHN DAVIS, MAUREEN KELLY DAVIS, DESIGN CONNECTION, LLC AND 4SONSSPORTS L.L.C.

78. ACBL incorporates and reiterates all of the allegations set forth above as if set forth fully here.

79. Defendants, through their tortious conduct described above, acted with "oppression," "fraud," and "malice" justifying an award of punitive damages under Kentucky Revised Statute 411.184.

80. ACBL, by virtue of the above claims, is entitled to recover punitive damages from Defendants in an amount to be determined at a jury trial of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff American Commercial Barge Line, LLC requests the following relief:

A. Judgment against Defendants John Davis, Maureen Kelly Davis, Design Connection, LLC and 4SonsSports L.L.C. in its favor;

B. Compensatory, punitive and other damages in an amount to be proven at trial;

C. A trial by jury of all matters triable by a jury;

E. Its attorneys' fees and costs; and

F. Any and all other relief to which it may be entitled.

Respectfully submitted,

/s/Adam T. Goebel
Adam T. Goebel
Adam C. Reeves
STOLL KEENON OGDEN PLLC
500 West Jefferson Street
Suite 2000
Louisville, KY 40202-2828
Tel:   (502) 333-6000
Fax:   (502) 333-6099
Adam.Goebel@skofirm.com
Adam.Reeves@skofirm.com

*Counsel for Plaintiff American Commercial Barge Line, LLC*